Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| FRANCISCO JOSÉ NIEVES CHRISTIE<br><br>Apelante<br><br>v.<br><br>AIDS HEALTHCARE FOUNDATION, INC.<br><br>Apelada | KLAN202400723 | Apelación procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Sobre:<br>Despido Injustificado (Ley Núm. 80 de 30 de mayo de 1976, según enmendada)<br><br>(Procedimiento Sumario, Ley Núm. 2 de 17 de octubre de 1961)<br><br>Caso Núm.<br>CN2023CV00113 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2024.

El apelante, Francisco José Nieves Christie, comparece ante nos para que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan, notificada el 15 de julio de 2024. Mediante esta, el foro primario declaró *Ha Lugar* una *Moción de Sentencia Sumaria* promovida por Aids Healthcare Foundation, Inc. (la parte apelada). En consecuencia, desestimó una *Querella* incoada por el apelante por despido injustificado, al amparo de la Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185 *et seq.*

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

### I

La parte apelada es una organización sin fines lucro encargada de proveer servicios de salud a poblaciones con VIH-

SIDA. Desde el 20 de agosto de 2018, el apelante trabajó para esta corporación como *Pharmacy Manager*. El 15 de diciembre de 2022, el apelante cesó sus labores, tras ser despedido por la apelada.

El 29 de marzo de 2023, el apelante presentó la *Querella* de epígrafe. En esta, alegó haber sido despedido de manera injustificada por la apelante. Adujo que no existía, patrón de conducta impropia ni violación reiterada a las normas de la entidad atribuibles a él, que ameritara la separación de su empleo. Por lo tanto, solicitó el pago de indemnización, costas y honorarios por vía del procedimiento estatuido en la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118, *et seq.*[1]

El 1 de mayo de 2023, la apelada presentó su escrito titulado *Contestación a Querella*. A través de esta, arguyó que el despido fue justificado, toda vez que el apelante fue sujeto de acciones correctivas y progresivas previo a su despido, debido a su patrón de conducta impropia y en violación a las reglas y políticas de la compañía. Especificó que, el apelante, incumplió con las funciones esenciales de su puesto y con las expectativas de sus supervisores, poniendo en riesgo la marcha ordenada de los servicios de la entidad. Según expuso la apelada, el apelante, previo a su despido, recibió una amonestación verbal y una acción disciplinaria escrita final, por incurrir en conductas, tales como: tardanzas que afectaron el horario de operación de la farmacia; cierre de la farmacia antes de tiempo; alteraciones a la hoja de asistencia de empleados afectados por sus tardanzas; incumplimiento con el protocolo de Covid-19, arriesgando la salud de compañeros y pacientes, ello en incumplimiento con las normas de la empresa.[2]

---

[1] Apéndice Recurso de Apelación, págs. 1-2.
[2] *Íd.*, págs. 3-7.

Tras varios trámites procesales, que no son necesarios pormenorizar, el 14 de diciembre de 2023, la apelada presentó una *Moción de Sentencia Sumaria.* En el pliego, esbozó cincuenta y cuatro (54) relaciones de hechos materiales respecto a los cuales alegó no existía controversia. Así, al amparo de la Ley Núm. 80, *supra,* sostuvo que el despido fue justificado y que procedía la desestimación con perjuicio del caso de epígrafe. Planteó que, como *pharmacy manager,* este era el encargado de abrir y mantener las operaciones de la farmacia en el horario establecido y de supervisar a los técnicos de farmacia. A su vez, sostuvo que este tenía acceso y conocimiento de lo establecido en el Manual del Empleado de la entidad, en el que se enumeraban las normas a regir sus funciones como empleado.

Según indicó, la decisión en controversia se basó en que el apelante ocasionó que la farmacia no estuviera en funciones dentro del horario de operaciones establecido en, al menos, diez (10) ocasiones. Por igual, sostuvo que éste manipuló el registro de asistencia de dos (2) empleados, a los cuales supervisaba, para reflejar que comenzaron a trabajar en un horario distinto al que realmente comenzaron a trabajar. Especificó, que los empleados no habían podido registrar su hora de llegada por culpa del apelante, al éste no llegar a tiempo para abrir la farmacia. Añadió que, en una (1) ocasión, el apelante cerró la farmacia antes del horario de cierre, sin autorización de sus supervisores, dejando fuera del establecimiento a una empleada con medicamentos controlados, sin las credenciales ni la supervisión requerida, en violación de las normas, políticas y buena marcha de la entidad. Sobre este particular, expuso que dicho Manual establece que la falsificación de la hoja de asistencias o expedientes de la empresa y la ausencia de la estación de trabajo, sin la debida autorización, son conductas que conllevan acción disciplinaria. Mientras que, sobre puntualidad

y asistencia, expuso que el Manual del Empleado define como tardanzas o ausentismo **excesivo** la ocurrencia de estas en tres (3) ocasiones dentro de un periodo de noventa (90) días. Así, conforme lo antes descrito expresó que, se le amonestó al apelante en distintas fechas: una amonestación verbal el 22 de febrero de 2022; una por escrito el 26 de octubre de 2022; y, un *final warning* el 22 de noviembre de 2022, advirtiéndole que, de incurrir nuevamente en conducta contraria a las normas de la empresa, podía ser despedido.

Por último, la parte apelada detalló que, el 3 de diciembre de 2022, luego de habérsele aplicado las acciones disciplinarias progresivas por las conductas antes descritas, y destacando que por el último incidente se le entregó un *final warning* al apelante, éste asistió a una fiesta de la corporación habiendo estado expuesto al Covid-19, en violación al protocolo y normas establecidos por la empresa. A esto añadió, que el 5 de diciembre del mismo año, el apelante se presentó al trabajo sin haber llenado el formulario de exposición y, en horas de la tarde comenzó a tener síntomas. A causa de esto, procedió a llenar el formulario de exposición establecido en el protocolo y en dicho momento fue cuando la supervisora advino en conocimiento de la situación. Debido a ello, y en consideración de las acciones correctivas, la apelada determinó despedirle.[3]

Por su parte, el 12 de febrero de 2024, el apelante presentó un escrito titulado *Oposición a Moción de Sentencia Sumaria.* En particular, alegó haber controvertido cuarenta y seis (46) de los hechos presentados por la apelada. En su pliego, planteó que la

---

[3] Apéndice Recurso de Apelación, págs. 8-138. En esta, la apelada acompañó su pliego con los siguientes documentos, a saber: la Deposición de Francisco José Nieves Christie efectuada el 27 de julio de 2023, documento de oferta de empleo del 2 de agosto de 2018, *Contribution Profile*, Plan de Mejoramiento del 26 de octubre del 2022, Manual de Empleados, acuse de recibo del mismo, hoja de ponches de dos empleados, *Covid-19 Safety Measures,* formulario de exposición del 5 de diciembre de 2022, un *Final Warning* del 22 de noviembre de 2022 contra el empleado, carta de despido.

mayoría de los hechos por esta propuestos no eran hechos esenciales a la disputa entre las partes, así como que la parte apelada hacía uso de una narrativa acomodaticia. Por otro lado, en dicho escrito en oposición, propuso treinta y nueve (39) relaciones de hecho y solicitó, por lo tanto, que se dictara sentencia sumaria a su favor. En su discusión del derecho expuso que la apelada no satisfizo el estándar de justa causa, al alegadamente no establecer que incurrió en patrón alguno de conducta impropia que afectara la marcha de la corporación. En lo pertinente, aunque admitió que era un hecho incontrovertido que había llegado tarde en varias ocasiones durante enero y febrero 2022, indicó que corrigió dicha conducta en febrero de ese mismo año, tras recibir una amonestación verbal. Razonó que, al corregir la conducta, no se cumplió con el patrón de conducta impropia. Admitió, a su vez, que recibió amonestación por escrito el 22 de noviembre de 2022, como consecuencia de haber cerrado la farmacia antes del horario establecido. No obstante, excusó dicha acción tras indicar que ello obedeció a que tuvo que resolver una alegada emergencia. Además, sostuvo que no incumplió con la norma de autorización del supervisor, toda vez que, a su interpretación, lo que correspondía era notificar y no pedir permiso.[4]

El 3 de abril de 2024, la apelada presentó un escrito titulado *Réplica a Oposición a Moción de Sentencia Sumaria.* En esencia, adujo que ninguna de las alegaciones del apelante derrotaba la justa causa demostrada por el patrono, ello por razón de que no estaban sustentadas en evidencia admisible. Por igual sostuvo que, aquellas

---

[4] Apéndice Recurso de Apelación, págs. 139-187. El apelante, fundamentó su moción con: la Deposición de Francisco José Nieves Christie efectuada el 27 de julio de 2023, documento de oferta de empleo del 2 de agosto de 2018, *Code of Conduct,* Moción de Sentencia Sumaria en su totalidad, *Contribution Profile,* Plan de Mejoramiento del 26 de octubre del 2022, Manual de Empleados, hoja de ponches de dos empleados, *Covid-19 Test Results,* un *Final Warning* del 22 de noviembre de 2022 contra el empleado, varios correos electrónicos con sus supervisores.

que sí lo estaban, no creaban controversia real sobre los hechos materiales y esenciales del caso. Enfatizó que el apelante admitió haber sido sometido a un proceso de disciplina correctiva y progresiva, y que no expuso justificación suficiente para suprimir la corrección de la acción tomada en su contra. Por su parte, afirmó que tampoco procedía la sentencia sumaria solicitada por el apelante, por haberse presentado fuera de término dispuesto. Así, reiteró que por estos fundamentos, el foro primario debía declarar la Sentencia Sumaria a favor del patrono.[5]

Tras entender sobre los respectivos argumentos de ambas partes, el 15 de julio de 2024, el Tribunal de Primera Instancia declaró *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por la apelada. En consecuencia, desestimó la demanda del apelante con perjuicio.[6] Determinando así que el despido fue justificado y que no existía causa de acción contra la apelada.

Inconforme, el 29 de julio de 2024, el apelante comparece ante nos mediante el presente recurso de apelación. En el mismo formula los siguientes señalamientos:

> Erró el Tribunal de Primera Instancia al dictar sentencia sumaria a favor del patrono apelado sin formular determinaciones de hechos ni conclusiones de derecho a pesar de haber hechos en controversia identificados en la oposición a la moción de sentencia sumaria, tales como los hechos número: 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, 20, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50. 51, 52 y 53.
>
> Erró el Tribunal de Primera Instancia al concluir que procedía como cuestión de derecho dictar Sentencia Sumaria a favor del patrono.
>
> [Erró] al denegar la solicitud de Sentencia Sumaria del apelante a pesar que los hechos incontrovertidos propuestos por el apelante en su oposición a la moción de sentencia sumaria del patrono demuestran que el despido fue injustificado a tenor con la Ley Núm. 80-1976.

---

[5] *Íd.*, págs. 216-291.
[6] *Íd.*, págs. 293-294.

**II**

**A**

Mediante la aprobación de la Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185 *et seq.,* el legislador estableció en nuestro estado de derecho un esquema de naturaleza protectora dentro del ámbito de las relaciones obrero-patronales, para desalentar la práctica de cesantear a un empleado sin motivo legítimo alguno. *Figueroa Rivera v. El Telar, Inc.,* 178 DPR 701 (2010). De este modo, el propósito fundamental del referido precepto es hacer valer la política pública imperante en nuestra jurisdicción en cuanto a la prohibición del despido sin causa, ello mediante la concesión de ciertos remedios tendentes a mitigar las consecuencias lesivas derivadas de una remoción infundada. Exposición de Motivos, Ley. Núm. 80, *supra; Jusino et als. v. Walgreens,* 155 DPR 560, 571 (2001). Así, la antedicha disposición, como método disuasivo, preceptúa el derecho de los empleados a recibir una compensación económica en aquellos casos en que sean separados de su cargo sin que medie *justa causa.* 29 LPRA sec. 185a; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 425 (2013); *Figueroa Rivera v. El Telar, Inc.,* supra; *Jusino et als. v. Walgreens,* supra; *Díaz v. Wyndham Hotel Corp.,* 155 DPR 364, 375 (2001).

El despido por justa causa es aquél que tiene su génesis en una razón vinculada a la marcha ordenada y al buen funcionamiento de la empresa de que trate. *Srio. Del Trabajo v. G.P. Inds., Inc.,* 153 DPR 223, 244 (2001). En este contexto, resulta correcto afirmar que, si bien la Ley Núm. 80, *supra*, se perfila como una garantía de índole reparadora a interpretarse de manera liberal a favor del empleado, lo cierto es que, al reconocer los derechos y facultades del patrono, provee un mecanismo dual para equilibrar intereses en los que se funda toda relación laboral. *Rivera v. Pan*

*Pepín,* 161 DPR 681, 689-690 (2004); *Jusino et als. v. Walgreens,* supra. Así, aunque no de manera taxativa, el estatuto en cuestión enumera ciertas circunstancias que habrán de catalogarse como justa causa para remover a un empleado de su cargo. Las mismas distinguen entre aquellas imputables al obrero y otras que, aunque no le son atribuibles, suponen un despido prácticamente inevitable. *SLG Zapata- Rivera v. JF Montalvo,* supra; *Figueroa Rivera v. El Telar, Inc.,* supra.

En lo pertinente, constituye justa causa para la cesantía de un empleado, toda conducta que no esté motivada por razones legalmente prohibidas que afecte el buen y normal funcionamiento de determinada empresa, a saber:

[…]

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

[…]. 29 LPRA sec. 185(b).

El estado de derecho reconoce que los patronos están plenamente facultados para fijar las normas de conducta que estimen pertinentes a regir en su lugar de trabajo, sujeto a que las mismas no resulten onerosas para sus empleados. *Rivera v. Pan Pepín, supra.* La jurisprudencia vigente intima que las violaciones a las normas de empleo constituirán causa justa para un despido cuando concurren los siguientes factores: 1) las normas establecidas por el patrono son razonables; 2) el patrono suministró

copia de las mismas a sus empleados y; 3) el empleado violentó las normas en múltiples ocasiones. *Feliciano Martes v. Sheraton*, 182 DPR 368, 381-382 (2011). Por tanto, el incumplimiento reiterado de las normas de trabajo legitima el despido que en su día decrete, sin que ello implique para el patrono sujeción alguna a los remedios que provee la Ley Núm. 80, *supra.*

**B**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa de que trate. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 979-980*; Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA,* supra, pág. 941; *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág. 333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 677*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, págs. 432-433.

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones

pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.*, supra, pág. 678*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, págs. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales

criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero,** reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> **Segundo,** por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.
>
> **Tercero,** en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado

numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto,** y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

## C

En el trámite de los recursos de apelación, nuestro ordenamiento procesal ha sido enfático al establecer que el escrito a tales efectos, constituye el alegato del apelante. De esta forma, cuando un recurso de apelación carece de señalamiento de error, o cuando el mismo no es discutido propiamente, el tribunal revisor no puede considerar la petición sometida. *Morán v. Martí,* 165 DPR 356, 365 (2005).

Cónsono con lo anterior, el Reglamento del Tribunal de Apelaciones, 4 LPRA. Ap. XXII-B, (Reglamento), detalla las exigencias requeridas cuando, mediante algún recurso, se solicita su intervención. En lo referente al contenido de los escritos de apelación, la Regla 16, en su inciso "C", específicamente dispone que:

> "1. Todo escrito de apelación contendrá, numerados, en el orden aquí dispuesto, los requerimientos siguientes:
> ...
> (d) Una relación fiel y concisa de los hechos procesales y de los hechos importantes y pertinentes al caso.
> (e) Un señalamiento breve y conciso de los errores que, a juicio de la parte apelante, cometió el Tribunal de Primera Instancia.
> (f) **Una discusión de los errores señalados,** incluyendo las disposiciones de ley y la jurisprudencia aplicable." 4 LPRA. Ap. XXII-B, R. 16 (C)(1). (Énfasis nuestro).

Igualmente, añade que:

> [. . .]
>
> 2. El escrito de apelación será el alegato de la parte apelante. No se permitirá la presentación de un alegato o memorando de autoridades por separado. La argumentación y los fundamentos de derecho deberán incluirse en el cuerpo del escrito de apelación." 4. LPRA. Ap. XXII-B, R. 16 (C) (2).

La anterior norma claramente ordena, a quien recurre al auxilio del Tribunal de Apelaciones, a señalar, discutir y fundamentar el error o los errores imputados al tribunal sentenciador. En vista de que la actuación de los tribunales de justicia está revestida de una presunción de corrección, todo apelante está forzado a perfeccionar su recurso conforme a los requisitos legales y reglamentarios establecidos para así permitir que el foro intermedio pueda ejercer su función revisora. *Morán v. Martí,* supra, págs. 363-364.

> "El apelante tiene la obligación de poner en posición al foro apelativo de aquilatar y justipreciar el error anotado. Solamente mediante un señalamiento de error y una discusión fundamentada, con referencia a los hechos y las fuentes de derecho en que se sustenta, podrá el foro apelativo estar en posición de atender los reclamos que se plantean. Aceptar poco menos de eso convierte la apelación presentada en *un breve y lacónico anuncio de la intención de apelar*". *Morán v. Martí,* supra, a la pág. 366.

El alegato no sólo es un instrumento mediante el cual se trae a la consideración del Tribunal de Apelaciones la normativa en derecho aplicable a determinada controversia. El mismo constituye el mecanismo ideal para exponer, adecuadamente, los fundamentos de la apelación y la discusión pertinente a la cuestión por éste evaluada. *Morán v. Martí,* supra.

**III**

En la presente causa, el apelante aduce que erró el Tribunal de Primera Instancia al dictar sentencia sumaria a favor de la apelada sin formular determinaciones de hechos ni conclusiones de derecho a pesar de que, según alega, expuso una genuina controversia de hechos en su oposición. Indicó haber controvertido cuarenta y seis (46) hechos de los cincuenta y cuatro (54) expuestos en la *Moción de Sentencia Sumaria* promovida por la apelada, por lo que, a su juicio, disponer sumariamente del caso a favor del patrono, era improcedente. Por igual, expresó que incidió el foro primario

tras concluir que, como cuestión de derecho, la sentencia sumaria a favor de patrono era procedente, así como al negarse a conceder sentencia sumaria a su favor. Habiendo examinado los referidos señalamientos, a la luz de los hechos establecidos y el derecho aplicable, resolvemos confirmar la *Sentencia* apelada.

Un examen del expediente del caso nos lleva a concluir que el pronunciamiento que atendemos es uno conforme a derecho y a la prueba presentada. De los documentos que nos ocupan, no surge controversia alguna de hechos medulares que amerite dirimir el presente asunto mediante el cauce ordinario de adjudicación. Tras ejercer nuestras funciones revisoras, coincidimos en que, en el presente caso, concurren las condiciones procesales propias a la eficacia del mecanismo adjudicativo empleado por la sala sentenciadora. Por igual, intimamos que, en la disposición de la controversia de epígrafe, se aplicó de manera correcta la norma jurídica pertinente a la materia en disputa, por lo cual no impondremos nuestro criterio sobre aquel debidamente ejercido por el foro de origen.

Tal cual lo resuelto, la parte apelada demostró poseer justa causa y haber cumplido con la carga probatoria requerida para legitimar el despido del apelante. Contrario a lo que este nos plantea, hemos constatado que, en efecto, incurrió en un patrón de incumplimiento a las normas de la entidad, que comprometió el buen funcionamiento de la empresa compareciente y los servicios que esta ofrece. A la luz de lo detallado en el expediente, la parte apelante no logró controvertir los hechos alegados en la *Moción de Sentencia Sumaria* promovida por la apelada.

La prueba que hemos tenido a nuestro haber examinar, nos permite afirmar que, la acción patronal ejercida en contra del apelante fue una válida y legal. El expediente de autos acredita que este incurrió en un patrón de faltas e incumplimientos respecto a

sus deberes, que claramente incidió sobre la marcha ordenada y el buen funcionamiento de la entidad apelada. Las múltiples transgresiones a los límites de sus funciones, así como, también, a las normas establecidas por su patrono, gozan de la suficiencia requerida para justificar la separación de su empleo. Conforme quedó establecido, en una primera ocasión, el apelante recibió una amonestación verbal por múltiples incumplimientos con sus deberes como supervisor y con las normas y evaluaciones establecidas por la entidad. En específico, surge que ello resultó de problemas recurrentes en cuanto a su asistencia y puntualidad, así como también, por su acción deliberada de alterar los horarios de los empleados a los que supervisaba, todo para minimizar el efecto que sobre estos tenían sus múltiples transgresiones. Ciertamente, esta última conducta no solo es ilegítima, sino también, deshonesta y preocupante. Ante sus faltas, el apelante, *motu proprio,* se atribuyó facultades que no le correspondían y que tampoco eran permitidas por su patrono, por estar expresamente prohibidas en el Manual del Empleado.

Ahora bien, tras la acción correctiva de referencia, el apelante nuevamente se apartó de las regulaciones aplicables al debido ejercicio de sus funciones. Se demostró que, como segunda acción correctiva, la parte apelada colocó al apelante en un plan de mejoramiento y de adiestramientos, todo por razón de sus deficiencias de comunicación con sus supervisores y pares, así como por su incapacidad de manejar una situación de emergencia en la farmacia que redundó en la pérdida de medicamentos. No empece a ello, y aun esperándose una modificación en sus ejecutorias, el apelante, por tercera ocasión, incumplió con los procesos establecidos por la entidad apelada, ello al cerrar la farmacia antes del horario establecido, sin contar con autorización y sin tomar las medidas necesarias para que los servicios no se vieran afectados.

Ello, a su vez, ocasionó que, medicamentos controlados quedaran bajo la custodia improvisada de una técnico de farmacia que, por la acción del apelante, se quedó fuera del lugar sin la debida supervisión. Por esta crasa violación a las normas, la entidad apelada, entregó al apelante una amonestación final, apercibiéndole que faltas adicionales habrían de conllevar su despido. Sin embargo, dicha tajante advertencia no incidió en el curso de conducta insubordinada del apelante, toda vez que, con posterioridad, y con conocimiento, nuevamente transgredió las normas de su patrono relacionadas al protocolo de salud y seguridad del personal. En específico, el apelante se presentó a trabajar sin notificar haber estado en contacto inmediato con una persona contagiada con el virus Covid-19, potencialmente exponiendo, no solo a la plantilla laboral de la entidad, sino, a una población con un sistema de salud inmunosuprimido, a la cual la farmacia compareciente destina sus servicios.

Todo lo antes expuesto demuestra que el apelante fue sometido a acciones correctivas progresivas, tal cual lo exige el estado de derecho, ello en ocasión a un patrón de conducta reiterado, y evidentemente intencional, en cuanto al incumplimiento con las normas de trabajo a las que debía estar sujeto. Su conducta incidió sobre las operaciones de la parte apelada y demostró su inhabilidad para ajustarse al buen desempeño del puesto que ocupaba. La prueba sustentó las alegaciones expuestas por la parte apelada, ello a los efectos de justificar el despido del apelante. Dicha actuación estuvo enmarcada en los parámetros establecidos en la Ley Núm. 80, *supra*, por lo que, en ausencia de prueba en contrario, el despido en controversia, encuentra entero amparo en la norma.

Por otra parte, destacamos que el escrito en oposición a la solicitud de sentencia sumaria, promovida por el apelante, carece de fundamentos e incumple con las exigencias procesales estatuida en

nuestro ordenamiento jurídico para controvertir los hechos expuestos por la parte apelada. En su pliego, el apelante, en su mayoría, se limitó a calificar como "no esenciales" los hechos expuestos por su patrono en la solicitud de referencia. No obstante, tal no constituye el quehacer procesal idóneo requerido para rebatir el carácter conclusorio de los hechos establecidos. Si su pretensión era establecer una genuina controversia en cuanto a las alegaciones en cuestión, tenía la obligación procesal de exponer apoyo fáctico y legal que propendiera a suprimir la oponibilidad de los argumentos adecuadamente expuestos por la parte apelante. Ello, unido a la ausencia de prueba que mine la legitimidad de su despido, solo lleva concluir que el apelante incide en su razonamiento.

Finalmente, sobre el segundo y tercer señalamiento de error, debemos puntualizar que el apelante no discutió propiamente los mismos. Por un lado, aduce que no procedía en derecho dictar sentencia sumaria a favor de la apelada. Sin embargo, por otro, insiste en que erró el foro primario al denegarle la solicitud que propuso en su escrito en oposición tras, alegadamente, haber probado que el despido no fue justificado al amparo de la Ley Núm. 80, *supra*. Ahora bien, mediante solo cinco (5) oraciones, divididas en dos párrafos, y sin mayor argumento, meramente aludió a su escrito en oposición, al indicar que, en este, enumeró treinta y nueve (39) hechos que, a su entender, no fueron controvertidos. Así, en su lacónica exposición, no cuestionó error en derecho alguno aplicable al segundo señalamiento, ni razonó cómo la norma, conjuntamente con la prueba, sustenta su postura. Situación similar ocurre con el tercer señalamiento, donde no discute cómo al amparo de la Ley Núm. 80, *supra*, el despido era injustificado.

Sabido es que, las actuaciones de los foros de instancia se presumen correctas, por lo que aquél que las impugne tiene que colocar a este Tribunal Apelativo en posición de aquilatar y

justipreciar el error presentado. En consideración a ello, los errores no discutidos en un alegato se entienden renunciados y no serán considerados por los tribunales revisores. Véase, *Pueblo v. Rosario Paredes*, 209 DPR 155, 189-190 (2022); *Pueblo v. Adorno Cabrera*, 133 DPR 839, 857 (1993). Igualmente, la mera alegación de un error no fundamentado o discutido no debe ser motivo para revisar, modificar o, de alguna manera, cambiar una decisión de un tribunal. No obstante, si bien basta determinar que el apelante no discutió estos señalamientos y, por ende, se entienden renunciados, puntualizamos que, aun considerándolos, los mismos no fueron cometidos y carecen de méritos.

El despido que el apelante impugna, se fundamenta en un patrón de conducta lesiva, reiterada e ilegítima. Los argumentos que este expone están muy lejos de poder excusar sus faltas como supervisor de una entidad que, para proveer los servicios que ofrece, precisa de personal diligente. Las acciones del apelante distan de un buen desempeño y claramente interfieren con la marcha ordenada de los procesos en la apelada. Siendo así, y toda vez que, reiteramos, concurrieron los criterios legales para validar la acción patronal aquí en controversia, sostenemos que el despido está justificado.

**IV**

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones